JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2001 | **DATE** | 3/17/2004 |
| **CASE TITLE** | Rogers Wilson vs. JoAnne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#21] is hereby **granted**; Defendant's Motion for Summary Judgment [#26] is **denied**; the Court remands this case to the Commissioner for further proceedings consistent with this Opinion. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 2 number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | MAR 18 2004 date docketed | 30 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | J X M docketing deputy initials | |
| ✓ | Mail AO 450 form. | 3/17/2004 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| FT | courtroom deputy's initials | FT mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
2004 MAR 17 PM 2: 39

Date/time received in central Clerk's Office

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

MAR 1 8 2004

ROGERS WILSON,              )
                           )
          Plaintiff,        )
                           )
     v.                     )    Case No. 03 C 2001
                           )
JO ANNE B. BARNHART,        )    Magistrate Judge Arlander Keys
Commissioner of Social      )
Security,                   )
                           )
          Defendant.        )

### MEMORANDUM OPINION AND ORDER

Plaintiff Rogers Wilson seeks judicial review of a decision by the Commissioner of Social Security to deny him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The parties have both moved for summary judgment. For the reasons set forth below, Mr. Wilson's motion is granted, and the Commissioner's motion is denied.

### Facts and Procedural History

Rogers Wilson, now 52, suffers from arthritis affecting his lower back and wrist, depression and a mild pulmonary impairment; in addition, he has a history of alcoholism and seizures. Mr. Wilson injured his back in an accident in 1992, and, since that time, has suffered chronic pain in his lower back; he claims that his back has progressively deteriorated to the point where, as of December 31, 1996, he became unable to work. On February 16,



1999, at the age of 47, Mr. Wilson applied for Supplemental Security Income and Disability Insurance Benefits. His application was denied initially on April 28, 1999, and again on reconsideration on October 21, 1999. Mr. Wilson requested a hearing before an administrative law judge (ALJ) and appeared with counsel before ALJ Christine Holtz on May 31, 2000.

Mr. Wilson was the only person to testify at the hearing. He testified that he lived with his brother-in-law, who did all the cooking, cleaning, and household chores for him. Record at 35-36. When asked about his employment history, Mr. Wilson testified that he had worked for twenty-two years, as a "network control operator," which involved lifting and carrying bundles of paper weighing up to 25 pounds. Record at 37. He testified that he was laid off in 1992. Afterwards, he testified, his back pain prevented him from accepting another job. Thus, he has not worked since the lay off. Record at 56-57.

When asked about his back, Mr. Wilson testified that he now experiences sharp pain in his lower back when he sits for longer than 15 minutes, when he stands for longer than 20 minutes, and when he walks farther than ¼ of a block. Record at 38. He testified that he received periodic injections in his lower back from Cook County Hospital that  helped to temporarily relieve the pain. Record at 40.

Mr. Wilson also testified that, in addition to his back problems, he experiences shortness of breath whenever he walks too far or inhales heavy odors. Record at 41. Additionally, at the time of the hearing, Mr. Wilson wore a cast on his right thumb; he testified that he experienced pain in his thumb whenever it was touched, and that, at times, the pain was so bad that he needed help shaving. Record at 43. Mr. Wilson reported that his daily activities consisted primarily of sitting around and lying down; he sometimes would read, but frequently would get frustrated because he had difficulty concentrating. Record at 45-46. He testified that he rarely left his apartment, generally only for doctor appointments and occasional visits with his mother; he testified that he felt socially isolated, generally having no contact with anyone but his mother and his brother-in-law. Record at 46.

In addition to Mr. Wilson's testimony, the ALJ considered medical records from Cook County Hospital, where Mr. Wilson had undergone outpatient treatment on a regular basis. According to the records submitted to the ALJ, Mr. Wilson received his first lumbar injection to control back pain on April 29, 1997. Record at 187. On June 4, 1997, he received a lumbar epidural steroid injection. Record at 185. One month later, he returned to the pain clinic and reported that, after having a period of relief,

3

he again experienced sharp pain, at a level of 8.5 out of 10.
Record at 184. On July 9, 1997, he received another injection.
Record at 183. The records show that Mr. Wilson had returned to
Cook County Hospital sporadically to receive lumbar injections
through as late as May 25, 2000, six days prior to the hearing.
*See, e.g.*, Record at 276. In addition to the injections, the
records show that Mr. Wilson was consistently prescribed a number
of medications for pain, such as Salsalate, Ultram, and Elavil,
and that he also underwent a short course of physical therapy to
learn to control his back pain. Record at 176, 147-48.

The diagnoses of the various Cook County Hospital doctors
who treated Mr. Wilson generally state that he has some form of
arthritis of the lumbar spine. *See, e.g.,* Record at 178 (October
23, 1997, assessment of chronic lower back pain, multifactoral,
facet arthropathy, degenerative disc disease, spinous process
fracture, and SI joint disease); Record at 197 (noting that x-ray
from February 26, 1998, revealed "longstanding degenerative disc
disease" of lower vertebrae). Examinations of Mr. Wilson's back
generally indicate tenderness and reduced range of motion in the
lumbar spine. *See, e.g.,* Record at 182. As far as Mr. Wilson's
other health complaints are concerned, he was examined and
treated at various times in the Cook County Hospital Hand Clinic
for wrist and thumb pain; and, in late 1997, he was treated for

4

chronic bronchitis and received a prescription for inhalers. Record at 167, 154.

In addition to the Cook County Hospital records, the ALJ also considered the reports of two consulting medical examiners and a psychiatric consulting examiner. Dr. Ghanim Kassir, a consulting medical examiner who saw Mr. Wilson on March 18, 1999, performed a thorough internal medicine evaluation during which he reported that there was moderate tenderness along the lumbosacral spine, and that flexion of the spine was limited to 30 degrees. Record at 226. But, Dr. Kassir noted, Mr. Wilson's fist and grip strength were full. Record at 226. The overall diagnoses were chronic bronchitis with a reversible asthmatic component, gastroesophageal reflux disease, a history of a single seizure, musculoskeletal lower back pain, and radiculopathy. Record at 226-27, 231.

Mr. Wilson was next evaluated on September 15, 1999. At that time, he saw another internist, as well as a psychiatrist. The internist, Dr. Martin Beerman, noted that, although Mr. Wilson reported that just holding a pen caused him pain, he seemed to be able to dress himself without difficulty. Record at 235. Dr. Beerman diagnosed degenerative joint disease of the lumbar spine and wrist, an ulcer, a seizure disorder, and possible chronic obstructive lung disease. Record at 235-36.

5

Dr. Susan Fredriksen, the psychiatrist, diagnosed Mr. Wilson with major depression, and noted that his depression "can also accentuate his pain symptoms." Record at 244-46. This finding was consistent with assessments given by Mr. Wilson's treating psychologist, Dr. Betty Fisher, which the ALJ also considered. Record at 220-223. Dr. Fisher reported on September 13, 2000, that while Mr. Wilson's skills for coping with pain had improved, he appeared to be a good candidate for aggressive pain management. Record at 302.

Finally, the ALJ considered the opinions of two non-examining medical consultants, Dr. Kuester and Dr. Kudirka. Dr. Kuester found that Mr. Wilson's mental impairment was severe, but he nonetheless thought that Mr. Wilson could "perform simple tasks consistently in a regular work setting, within the parameters of his physical RFC." Record at 249. As part of his assessment, Dr. Kuester completed a Psychiatric Review Technique form, indicating that Mr. Wilson would often suffer "Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner (in work settings or elsewhere)." Record at 274. Dr. Kudirka, who provided a physical assessment on October 12, 1999, found that despite his physical impairments, Mr. Wilson could still perform light exertion work, though he needed to avoid unprotected heights,

including climbing ladders, ropes and scaffolds, needed to avoid hazardous moving machinery, and needed to avoid concentrated pulmonary irritants. Record at 259-66. Dr. Kudirka also noted that Mr. Wilson should be limited to only occasional balancing, stooping, kneeling, crouching, and crawling. Record at 261.

The ALJ issued her decision on December 18, 2000, concluding that Mr. Wilson was still capable of performing unskilled light work and was, therefore, not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on January 28, 2003. *See* 20 C.F.R. § 416.1481. Mr. Wilson then filed this action, seeking federal district court review of the Commissioner's decision and an award of SSI and DIB. The parties consented to proceed before a magistrate judge, and the case was reassigned to this Court on May 30, 2003. Thereafter, both parties moved for summary judgment. Mr. Wilson asks the Court to reverse the Commissioner's denial of his claim for benefits, or alternatively, to remand the case for further proceedings. The Commissioner asks the Court to affirm the agency's decision.

## Discussion

Disability Insurance Benefits and Supplemental Security Income are available only to claimants who can establish

7

"disability" under the terms of the Social Security Act. The social security regulations provide a five-step sequential analysis to determine whether a claimant is disabled for purposes of eligibility for benefits: (1) the ALJ first asks whether the claimant is presently unemployed; (2) if he is, the ALJ next asks whether the claimant's impairment is severe; (3) if it is, the ALJ asks whether that impairment meets or equals one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if it does, the impairment is conclusively disabling, but if it does not, the ALJ asks whether the claimant is able to perform his past relevant work; (5) if the claimant is not able to return to his old job, the ALJ asks whether in light of the claimant's age, education, job experience and functional capacity, the claimant is capable of performing other work that exists in the national economy. *See* 20 C.F.R. § 404.1520(a)-(f); *Maggard v. Apfel,* 167 F.3d 376, 378 (7th Cir. 1999); *McGee v. Barnhart*, No. 03 C 2761, 2003 WL 23019167, at *3 (N.D. Ill. Dec. 23, 2003). The claimant bears the burden of establishing a disability at steps one through four; the burden shifts to the Commissioner at step five. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f); *McGee*, 2003 WL 23019167, at *3.

When reviewing an ALJ's findings under the above analysis, the Court must affirm if they are supported by substantial

evidence and free of legal error.  42 U.S.C. § 405(g); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).  Evidence is "substantial" when it is sufficient for a reasonable person to conclude that the evidence supports the finding. *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000).  The Court "may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the [ALJ]." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994).

Where, however, "the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele,* 290 F.3d at 940.  Although an ALJ need not consider every piece of evidence or testimony in the record in order to successfully communicate her thought process, she cannot ignore an entire line of evidence or select and discuss only the evidence that favors her ultimate conclusion. *Herron,* 19 F.3d at 333; *Floress v. Massanari*, 181 F. Supp. 2d 928, 937-38 (N.D. Ill. 2002).  At least in this circuit, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusions so that [the Court] may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003); *McGee,* 2003 WL 23019167, at *3.

The ALJ applied the five-step analysis outlined above, first finding that Mr. Wilson has not engaged in substantial work activity since December 31, 1996, the alleged onset date of his disability. Record at 18. At step two, the ALJ found that Mr. Wilson suffers from "severe" impairments within the meaning of applicable Social Security regulations, including arthritis and degenerative joint disease of the lumbar spine and right wrist, a pulmonary impairment, depression, a history of a seizure disorder, and a history of alcoholism. Record at 21. At step three, the ALJ found that Mr. Wilson's impairments do not meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; she also found that Mr. Wilson's allegations of pain and physical limitations were not fully credible, and that he still retains the residual functional capacity (RFC) to perform unskilled light work. Record at 21-22. At step four, the ALJ found that Mr. Wilson is unable to perform any of his past relevant work. Record at 22. Finally, at step five, the ALJ found that Mr. Wilson could perform a significant number of unskilled light jobs in the national economy as provided by Medical-Vocational (Grid) Rule 202.21, Appendix 2, Subpart P, Regulation No. 4. Record at 23.

Mr. Wilson challenges the ALJ's decision on the following grounds: (1) he argues that her credibility findings are

inadequate under Social Security Ruling (SSR) 96-7p; (2) he argues that her RFC finding is flawed because she explicitly adopted the opinion of a state agency physician, then rejected part of the opinion without explanation; (3) he argues that, in making her RFC finding, she improperly disregarded work limitations caused by his depression; and (4) he argues that the evidence does not support the ALJ's findings at step five concerning the existence of other available jobs in the national economy. The Court considers each argument in turn.

Mr. Wilson first argues that the ALJ's evaluation of his credibility regarding his symptoms and pain was conclusory and insufficient under SSR 96-7p. In particular, Mr. Wilson notes, the ALJ did not specify which of his allegations of pain and limitations were not credible, which statements were inconsistent with each other, and which statements were unsupported by the objective medical evidence, as SSR 96-7p requires her to do. Moreover, Mr. Wilson argues, the ALJ failed to consider significant evidence supporting his claims of pain, such as his history of facet blocks and epidural injections, medications for pain, and substantial physical limitations.

The Commissioner disagrees, arguing that the ALJ's credibility findings are supported by substantial evidence, and that the ALJ was not required to specify which of Mr. Wilson's

statements were incredible or unbelievable. The Commissioner contends that the ALJ considered Mr. Wilson's history of pain treatment and medication in rendering her decision, but that she also considered evidence that he had exaggerated his symptoms. According to the Commissioner, the Court should affirm the ALJ's credibility finding because, in light of evidence of exaggerations, that finding was not patently wrong.

Because the ALJ is in the best position to see and hear witnesses, the Court will accept the ALJ's credibility findings unless the claimant shows that they are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, where a particular credibility finding "rests on objective factors or fundamental implausibilities rather than subjective considerations such as a claimant's demeanor," it is entitled to less deference, and the Court has greater freedom to review the decision. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Furthermore, if the claimant indicates that pain is a significant factor limiting his ability to work, the ALJ is required to "investigate all avenues presented that relate to pain," including such factors as "the nature and intensity of the pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities."

*Clifford*, 227 F.3d at 869 (citing *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)). Where medical evidence supports a claimant's allegations and the ALJ nevertheless rejects a claimant's testimony as not credible, the ALJ cannot simply ignore the claimant's allegations, but must articulate specific reasons for her finding. SSR 96-7p; *see also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). The ALJ's reasons must be supported by record evidence and must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Lopez*, 336 F.3d at 539-40.

The ALJ did not explain what weight, if any, she gave to Mr. Wilson's testimony of constant back, wrist, and thumb pain. The sum total of her findings concerning Mr. Wilson's pain allegations reads:

> I do not find the claimant's allegations and testimony
> to be fully credible. While there is some basis for
> the claimant to have some pain, which would limit him
> from work requiring medium or heavy exertion, his
> alleged pain levels are not reasonably related to the
> underlying medical conditions. There were also
> indications from the consultative examination reports
> that the claimant was exaggerating his symptoms and
> limitations.

Record at 21.  The Court assumes that, in the last sentence

quoted, the ALJ was referring to the reports prepared by Dr.

Kassir and Dr. Beerman.  Nothing in Dr. Kassir's report supports

the ALJ's statement.  Dr. Beerman's report does contain a couple

of statements that can be read to imply exaggeration:

> Of note is that whenever [Mr. Wilson] was asked to
> ambulate or climb on and off the examination table, he
> is uttering, 'Oh man, I can't do this, I can't do
> this.' When encouraged to ambulate, he was able to
> ambulate without an assistive device for at least 50
> feet at a time . . . .  The claimant was observed to be
> able to take off and put on his shoes without
> difficulties… [However, when] he was asked to move a
> pen from left to right eye, obviously noticing that
> dexterity was tested, he moved the pen from the left
> hand to the right hand by sticking the pen between the
> fourth and fifth digit.

Record at 234-235.  Yet, despite these observations, Dr. Beerman

still concluded that Mr. Wilson's "description of the pain in the

lumbar spinal area, as well as right wrist and hand, are

consistent with degenerative joint disease. The physical

examination finding that includes tenderness, as well as

decreased range of motion, support this."  Record at 235.  Dr.

Beerman's x-ray findings also confirm moderately advanced

osteoarthritis of the lumbar spine.  Record at 243.  Thus, Dr.

Beerman's report cannot, without more, undermine Mr. Wilson's

pain allegations.  Certainly, it does not constitute substantial

evidence that Mr. Wilson's "alleged pain levels are not

14

reasonably related to the underlying medical conditions," as the
ALJ concluded. Record at 21.

What is missing from the ALJ's evaluation of Mr. Wilson's
credibility is any indication of how she took into account Mr.
Wilson's extensive history of treatment for pain. The medical
records show that, since early 1997, Mr. Wilson has received
repeated lumbar and epidural injections to control his pain. *See,
e.g.,* Record at 160, 168, 173, 179, 183, 187, 208, 210, 214. The
records also show that he has consistently used prescription
medications, including Diclofenac, Ultram, and Amitriptyline, to
alleviate his pain and his depression symptoms. Record at 152.
All of this evidence suggests that many doctors – those ordering
the injections and prescribing the pain killers – believed Mr.
Wilson's pain reports were well-founded, and that is important.
*See Carradine v. Barnhart,* – F.3d –, No. 02-4318, slip op. at 5-6
(7th Cir. March 12, 2004)(noting the improbability that a
claimant would undergo extensive, invasive pain treatment
procedures just to boost her chances of getting disability
benefits, and the improbability that doctors would prescribe
drugs and treatments if they thought the claimant was faking).
The ALJ did note some of Mr. Wilson's epidural injections, but
there is no indication that, in assessing the credibility of his
alleged pain, she considered his extensive regimen of injections

15

and medications.  Record at 19-20.  And she should have.  *See*
*Golembiewski*, 332 F.3d at 917 ("[A]lthough the ALJ need not
discuss every piece of evidence in the record…the ALJ may not
ignore an entire line of evidence that is contrary to the
ruling.")(citations omitted).

Similarly, the ALJ seemed to dismiss out-of-hand Mr.
Wilson's claims of pain-related physical limitations.  Here too
the ALJ was required to "investigate all avenues presented that
relate to pain," including such factors as "the nature and
intensity of the pain, precipitation and aggravating factors,
dosage and effectiveness of any pain medications, other treatment
for the relief of pain, functional restrictions, and the
claimant's daily activities." *Clifford*, 227 F.3d at 869.  And
here too the ALJ seems to have fallen short.

Mr. Wilson testified that he generally suffers sharp back
pain when he walks more than ¼ of a block, when he sits down for
more than ten or fifteen minutes, or when he stands for longer
than twenty minutes.  Record at 38.  He also testified that he
suffers pain when anything touches his right thumb.  Record at
43.  He testified that his daily activities are limited to
sitting around or lying down, reading sporadically, going to
doctors appointments, and going to his mother's house every once
in a while.  Record at 45-46.  He testified that he is unable to

16

do household chores, and that his brother-in-law cooks all his meals and helps him shave when his hand is especially painful. Record at 35-36. On direct examination, Mr. Wilson testified that he could not lift a ten-pound bag of sugar because of his pain; upon further questioning, he testified that, in the preceding two years, the heaviest thing he had lifted was his thirty-pound granddaughter, which caused him such pain that he dropped her and had to go to Cook County Hospital afterwards. Record at 49-50.

Evaluating Mr. Wilson's alleged physical limitations resulting from pain, the ALJ stated:

> [h]e was not consistent in what he alleged as his limitations . . . . The claimant's moderate osteoarthritis of lumbar spine and right wrist justify limiting his lifting and/or carrying to 10 pounds frequently and 20 pounds on occasion. The claimant mentioned having lifted his 30 pound grandchild, but having paid for it with a more painful back the next day.

Record at 21-22. This evaluation is insufficient under SSR 96-7p for two reasons. First, the ALJ does not specify which of Mr. Wilson's alleged limitations are inconsistent with each other - indeed, Mr. Wilson's testimony about limitations in walking, lifting, and daily activities would appear to be entirely consistent, both with each other and with what he reported to doctors. See, e.g., Record at 180, 182, 214, 289. Based on what

little the ALJ provided, the Court is unable to review "the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Lopez*, 336 F.3d at 540. Additionally, the ALJ seems to have taken out of context Mr. Wilson's statement about his granddaughter, and she seems to have ignored all of the actual limitations he alleged. This is inappropriate. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003) (SSR 96-7p forbids "finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating [claimants'] credibility as an initial matter in order to come to a decision on the merits.").

In *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001), a case that is remarkably similar to this case, the claimant suffered from a severe back disorder and depression. The record showed that Mr. Zurawski had received several epidural injections, that he was prescribed a number of medications for pain and depression, and that his daily activities were fairly restricted. *Id.* at 887-88. The ALJ found that Mr. Zurawski's complaints of disabling pain were "not entirely credible due to inconsistencies with the objective medical evidence, and inconsistencies with daily activities." *Id.* at 887. Having dismissed Mr. Zurawski's pain reports, the ALJ concluded that Mr. Zurawski retained the

residual functional capacity to perform light work. *Id.* at 886.
The Seventh Circuit remanded, holding that "[u]nder Social
Security Ruling 96-7p, the ALJ's determination or decision
regarding claimant credibility 'must contain specific reasons for
the finding on credibility, supported by the evidence in the case
record, and must be sufficiently specific to make clear to the
individual and to any subsequent reviewers the weight the
adjudicator gave to the individual's statements and the reason
for that weight.'" *Id.* at 887. "The ALJ should have explained
the 'inconsistencies' between Zurawski's activities of daily
living . . . , his complaints of pain, and the medical evidence."
*Id.* So too here.

ALJ Holtz, like the ALJ in *Zurawski*, found Mr. Wilson's
statements to be inconsistent, but she never explained what the
inconsistencies were. More importantly, she appears to have
ignored the evidence establishing Mr. Wilson's pain (the evidence
of extensive epidural injections and prescription pain
medications). The ALJ's credibility findings seem to be based on
the opinion of one consultative examining physician, who merely
suggested that Mr. Wilson *might* have exaggerated his pain on one
occasion. Given that this physician still found Mr. Wilson's
pain allegations to be consistent with his impairments, and given
the other evidence supporting Mr. Wilson's pain-related

limitations, the ALJ was, at a minimum, required to explain her reasoning on this issue.

None of this is to say that the ALJ is necessarily wrong about Mr. Wilson exaggerating his pain allegations. In fact, one treating physician at Cook County Hospital seems to have believed that Mr. Wilson "exaggerated pain" during a range of motion test. Record at 207. But, on the basis of this record, and without some explanation from the ALJ, the Court "lack[s] a sufficient basis to sustain the ALJ's credibility determination." *Zurawski*, 245 F.3d at 888.

To support her argument that the ALJ's credibility determination was supported by substantial evidence, the Commissioner cites *Jens v. Barnhart*, 347 F.3d 209 (7th Cir. 2003). The ALJ in that case found that the claimant's statements were "not entirely credible" and denied his application for benefits. Mr. Jens sought remand, arguing that the ALJ's credibility determination was flawed because the ALJ failed to specify which statements were incredible and failed to provide an evidentiary basis for the credibility finding. *Id.* at 213. Noting that one of the treating physicians had explicitly stated that Mr. Jens's pain was "out of proportion to the exam lab or x-ray findings," and that Mr. Jens' assessment of his limitations was inconsistent with the medical evidence and with his daily

activities, the Seventh Circuit upheld the ALJ's determination. *Id.* at 210, 213-214. But *Jens* is inapposite for two reasons. First, in Jens, the record supported the ALJ's determination; here, it does not. Mr. Wilson's daily activities and extensive treatment history all suggest that the ALJ was wrong to dismiss his pain allegations. Second, the ALJ in *Jens* considered all of the evidence in reaching his conclusion; Mr. Jens could point to nothing in the record to undermine the ALJ's determination. Here, the ALJ appears to have ignored a plethora of evidence supporting Mr. Wilson's pain reports. Thus, unlike the court in *Jens*, this Court is unable to say that substantial evidence supports the ALJ's credibility findings. The ALJ here failed to evaluate Mr. Wilson's allegations of pain and pain-related limitations "with due regard for the full range of medical evidence," particularly evidence of his treatment for pain. *See Zurawski*, 245 F.3d at 888.

Based on the above, the Court is required to remand the case. Mr. Wilson claims to have sharp back pains upon walking, sitting for more than ten or fifteen minutes, standing for more than twenty minutes, and lifting ten pounds, and he claims to perform only the most limited daily activities. If believed, Mr. Wilson's testimony utterly belies the conclusion that he can perform even unskilled light work. *See id.* at 888-89 (remanding

ALJ's RFC finding because it overlooked significant evidence favorable to claimant). Moreover, to the extent that his wrist and thumb pain are credited, the sedentary job base may be eroded as well. *See* SSR-96-9p ("Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."). It follows that on remand, the ALJ may need to reevaluate Mr. Wilson's physical RFC, taking into account his significant pain-related limitations, to the extent they are supported in the record.

Mr. Wilson next argues that the ALJ committed legal error by adopting the RFC assessment of a state agency physician without also mentioning the postural limitations noted by that physician. Upon reviewing Mr. Wilson's medical records, Dr. Kudirka reported on October 12, 1999, that Mr. Wilson should be limited to lifting 10 pounds frequently and 20 pounds occasionally, and that he should also be limited to only occasional stooping, kneeling, crouching, and crawling. Record at 260-61. The ALJ apparently adopted Dr. Kudirka's assessment concerning Mr. Wilson's lifting ability, but she failed to mention the postural limitations concerning stooping, kneeling, crouching, and crawling. Record at 22. Mr. Wilson argues that the ALJ was required to explain why she overlooked this part of Dr. Kudirka's recommendations, or

at least explain why she thought these limitations were insignificant. The Commissioner disagrees, arguing that the ALJ was not required to address these postural limitations because they do not affect the light job base. The Court agrees that, standing alone, the postural limitations noted by Dr. Kudirka could not significantly erode the light job base. *See* SSR 83-14 ("[T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally."). In combination with other nonexertional limitations, however, a limited ability to bend due to back pain might limit the number of jobs the Mr. Wilson can perform. *See Golembiewski*, 332 F.3d at 917 (faulting ALJ's decision for failing to discuss claimant's limited ability to bend due to back pain). The ALJ should, therefore, consider Mr. Wilson's postural limitations along with evidence of other nonexertional limitations, including pain, upon remand.

Mr. Wilson next argues that the ALJ erroneously dismissed limitations caused by his depression. The ALJ determined that Dr. Kuester's mental RFC assessment and Psychiatric Review Technique form were "largely correct," except that Mr. Wilson's limitations in social functioning were, in her view, moderate, not slight, as Dr. Kuester had found. Record at 20, 22. But,

Dr. Kuester's Psychiatric Review Technique form also notes that the plaintiff "often" experiences deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. Record at 274. Despite this limitation, unmentioned by the ALJ, the ALJ concluded that Mr. Wilson's mental impairments would permit him to perform unskilled work. Record at 22.

Mr. Wilson argues that, at a minimum, the ALJ should have explained why she thought he could perform unskilled work when he often experiences deficiencies in concentration, persistence, or pace. To support his position, Mr. Wilson cites an unpublished Tenth Circuit case, holding that these deficiencies "may well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work." *Wayland v. Chater*, No. 95-7029, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996). Mr. Wilson also cites *Nelson v. Apfel*, 210 F.3d 799, 802 (7th Cir. 2000), in which a vocational expert concluded that a claimant would be precluded from substantial gainful activity if she "often" experienced deficiencies in concentration, persistence, or pace.

The Commissioner argues that the ALJ's mental RFC determinations are supported by Dr. Kuester's finding that Mr.

24

Wilson could perform simple tasks consistently in regular work settings within the parameters of his physical RFC. Record at 249. This finding, the Commissioner argues, is the same as saying that he could do unskilled work, because the regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Finally, the Commissioner argues that *Nelson v. Apfel* actually supports her position, because the court there held that deficiencies in concentration, persistence, or pace that occur often do not necessitate a finding of disability or even of a severe impairment.

After considering both sides' arguments, the Court agrees that the findings concerning Mr. Wilson's mental RFC and his capacity to perform unskilled work are well-supported. In determining the extent of the claimant's disability, the Commissioner is generally entitled to rely on the conclusions of qualified expert medical professionals that are consistent with the record as a whole. *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). There is no *per se* meaning attached to a doctor's finding that a claimant "often" experiences deficiencies in concentration, persistence, or pace, but rather it is the doctor's intended meaning of "often" that matters. *See Nelson*,

210 F.3d at 803 ("The bottom line is that we do not know what Dr. Johnson meant by "often."). Here, Dr. Kuester himself concluded that Mr. Wilson "could perform simple tasks consistently in regular work settings, within the parameters of his physical RFC." Record at 249. The ALJ reasonably assumed that Dr. Kuester's meaning of "often" was consistent with an ability to perform unskilled work. This is not to suggest that upon remand, the ALJ need not consider the interaction of Mr. Wilson's depression with his other nonexertional limitations, particularly pain, in determining his overall RFC and in answering whether there are significant numbers of jobs in the national economy which he can perform. *See Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) ("ALJs . . . must not narrowly confine their review to isolated impairments when the record shows that the impairments have some combined effect")(citations and quotations omitted).

Finally, Mr. Wilson argues that the ALJ's conclusion at step five is not supported by substantial evidence. Mr. Wilson argues that it was improper for the ALJ to rely on the Grid rules instead of calling upon a vocational expert to testify. The Commissioner disagrees, arguing that, because none of Mr. Wilson's nonexertional impairments is severe enough to restrict a full range of employment at the unskilled light work level, use

of the Grid was entirely appropriate. Indeed, the Commissioner argues, the use of the Grid rules was not only allowable, but required, given the ALJ's finding that Mr. Wilson's pulmonary limitations, postural limitations, pain, and deficiencies in concentration do not significantly erode the unskilled light work base. Because the Court is remanding the case for the ALJ to reevaluate the extent to which Mr. Wilson's pain creates nonexertional work limitations, it need not decide whether the use of the Grid rules at step five was proper. *See Zurawski*, 245 F.3d at 889 ("Because we have ordered a redetermination of Zurawski's residual functional capacity and a reevaluation of his testimony, it would be premature to direct the ALJ to solicit vocational testimony from an expert.").

## Conclusion

For the reasons set forth above, the Court finds that the ALJ failed to build an accurate and logical bridge between the evidence and her conclusion that Mr. Wilson is not disabled. In particular, the ALJ failed to explain how she factored into her credibility findings the extensive record concerning Mr. Wilson's pain and the limitations it caused on his daily activities and on his ability to work. Accordingly, the Court grants Mr. Wilson's motion for summary judgment and denies the Commissioner's motion for summary judgment. The Court remands the case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

Dated: March 17, 2004

ENTER:

ARLANDER KEYS
United States Magistrate Judge